892 F.2d 1043
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
Juan Carlos BIJARRO, Petitioner-Appellant,
v.
Elton SCOTT, Respondent-Appellee.
 No. 88-1824.
 United States Court of Appeals, Sixth Circuit.
 Jan. 3, 1990.
 
 Before KEITH and KENNEDY, Circuit Judges, and JOHN W. PECK, Senior Circuit Judge.
 PER CURIAM.
 
 
 1
 Petitioner appeals the denial of a writ of habeas corpus. Convicted of the first degree murder of Mr. Danny Lyke and of felony firearm possession, petitioner was sentenced to life imprisonment for the murder and two years for the firearm possession. The Michigan Court of Appeals affirmed the conviction, and the Michigan Supreme Court denied petitioner's request for review. In his appeal to this Court, petitioner raises four issues: (1) the denial of his right to confrontation; (2) the failure to disclose a witness's entire plea bargain; (3) a double jeopardy claim; and (4) an ineffective assistance of counsel claim. Finding no error in the District Court's denial of petitioner's writ of habeas corpus, we AFFIRM.
 
 
 2
 During petitioner's trial, a witness for the prosecution, James Stanley, testified extensively regarding the crime. Stanley admitted that he owned the gun that was the murder weapon, and that he had possession of the gun both before and after the murder. Stanley invoked his fifth amendment privilege against self-incrimination, however, with respect to questions regarding how he came into possession of the gun. Joint App. at 206. Petitioner wished to show that Stanley came into possession of the gun through a breaking and entering of his girlfriend's parents' house. Petitioner argues that "[i]t was crucial that [he] be allowed to question Stanley directly on his means of and purpose in acquiring the gun in question, to show, combined with the large sums of money that Stanley possessed, that Stanley intended to make drug buys and intended to use the murder weapon to enforce deals." Petitioner also claims that he was improperly denied the opportunity to pursue a line of questioning regarding the murder of Stanley's girlfriend, which occurred shortly after the breaking and entering, and which was allegedly related to Stanley's intent to use the murder weapon to enforce drug deals. Petitioner argues that these denials of his right to cross-examine the witness resulted in a constitutional violation of his right to confrontation.
 
 
 3
 The case law has established that confrontation clause errors are subject to a harmless error analysis. Delaware v. Van Arsdall, 475 U.S. 673, 684 (1986). We need not decide whether there was an error of constitutional magnitude in the present case, for any error was clearly harmless. The court in Van Arsdall stated, "[t]he correct inquiry is whether, assuming that the damaging potential of the cross-examination were fully realized, a reviewing court might nonetheless say that the error was harmless beyond a reasonable doubt." Id.
 
 
 4
 During the trial, Stanley admitted that he had been in possession of the weapon before the murder and that he did not obtain the weapon by purchasing it. Joint App. at 207. Whether Stanley acquired the weapon by committing a breaking and entering and whether he was involved in the murder of his girlfriend are immaterial to petitioner's theory that Stanley in fact murdered the victim in the present case. Petitioner was given ample opportunity to present to the jury his theory that Stanley was the murderer.[1] Petitioner presented sufficient evidence to mar Stanley's credibility as well. Petitioner presented evidence that at the time of the murder, Stanley was an escapee from prison and that he had at one time used an alias. Stanley testified that he had prior convictions for delivery of cocaine, armed robbery, and receiving and concealing stolen property. Petitioner also informed the jury that a breaking and entering of the Ruttan home, where the murder weapon had been, had occurred just a few days prior to Lyke's murder, and implied that Stanley was in some way connected with this burglary. Joint App. at 301-02. Little would have been added by the testimony of Stanley, for the jury was free to conclude that he had stolen the weapon from the Ruttan home. Thus if the court's refusal to permit testimony regarding the breaking and entering did constitute a constitutional violation, the error was harmless beyond a reasonable doubt.
 
 
 5
 Petitioner also argues that he was denied due process when a state witness failed to testify regarding a portion of a plea bargain that he received, and the prosecutor did not correct the error. Mr. Daniel Smith testified regarding incriminating statements that he said petitioner made to him while in the Monroe County Jail.[2]
 
 
 6
 Smith testified that he was awaiting sentencing on a charge of breaking and entering an occupied dwelling, to which he entered a nolo contendere plea. He stated that the sole agreement into which he entered was one providing that the prosecutor would dismiss the Habitual Offender supplemental charge filed against Smith in return for his nolo contendere plea. On cross-examination, Smith admitted that he had been convicted of three prior felonies and that as a result, under the Habitual Offender Act he could have received life imprisonment. He also testified that in light of the dismissal of the supplemental charge, he was facing a possible sentence of ten to fifteen years of imprisonment. Both Smith and the prosecution failed to reveal, however, that as part of the inducement for his plea, the prosecutor recommended that Mr. Smith be placed on probation.
 
 
 7
 When an accomplice or co-conspirator testifies against a petitioner, the prosecutor has an affirmative duty to disclose any consideration offered or received by the witness as well as the duty to correct false testimony concerning an agreement securing testimony or a reasonable expectation of leniency. People v. Woods, 416 Mich. 581, 604, 331 N.W.2d 707, 716 (1982), cert. denied, 462 U.S. 1134 (1983). The prosecution in the present case failed to fulfill this duty. Although we do not approve of the prosecutor's failure to fully disclose the terms of the plea agreement, we find that in light of what Smith did disclose regarding his plea agreement, any error was harmless.[3] Thus petitioner was not denied due process as a result of Smith's omission.
 
 
 8
 Petitioner next argues that he was twice placed in jeopardy in violation of the fifth and fourteenth amendments when the court failed to grant his motion for dismissal after petitioner's first state court trial was declared a mistrial. At petitioner's first trial, the jury was unable to reach a verdict after more than nineteen hours of deliberation over the course of two days. Petitioner argues that the trial judge acted with undue haste in declaring a mistrial for reasons completely unrelated to the fact of the first jury's indecisiveness.
 
 
 9
 As the District Court recognized, we are limited in our review of the trial judge's determination that "manifest necessity" justified a mistrial. The United States Supreme Court stated in Arizona v. Washington, 434 U.S. 497 (1978):
 
 
 10
 On the one hand, if [the trial judge] discharges the jury when further deliberations may produce a fair verdict, the defendant is deprived of his "valued right to have his trial completed by a particular tribunal." But if he fails to discharge a jury which is unable to reach a verdict after protracted and exhausting deliberations, there exists a significant risk that a verdict may result from pressures inherent in the situation rather than the considered judgment of all the jurors. If retrial of the defendant were barred whenever an appellate court views the "necessity" for a mistrial differently from the trial judge, there would be a danger that the latter cognizant of the serious societal consequences of an erroneous ruling, would employ coercive means to break the apparent deadlock. Such a rule would frustrate the public interest in just judgments. The trial judge's decision to declare a mistrial when he considers the jury deadlocked is therefore accorded great deference by a reviewing court.
 
 
 11
 Id. at 509-10 (footnotes omitted).
 
 
 12
 According such deference to the trial judge's decision to declare a mistrial, we find that the decision was not improper. In order to aid the jury, the court reread portions of the testimony to the jurors and gave written instructions on the charges and their elements. Further, the court was careful not to allow the jury to disclose the state of its deliberations, and there is no evidence that the court pressured the jurors to reach a decision or in any way coerced a verdict. Because the record indicates that the court exercised sound discretion in finding that "manifest necessity" justified the declaration of a mistrial, we find that petitioner was not subject to double jeopardy at his second trial.
 
 
 13
 Finally, petitioner makes an ineffective assistance of counsel argument. In Strickland v. Washington, 466 U.S. 668, reh'g denied, 467 U.S. 1267 (1984), the United States Supreme Court enunciated standards to be used in evaluating allegations of ineffective assistance of counsel in federal habeas corpus proceedings:
 
 
 14
 First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.
 
 
 15
 Id. at 687.
 
 
 16
 Petitioner alleges eleven errors, which he argues collectively constitute ineffective assistance of counsel. In the courts below, however, petitioner presented only four errors allegedly constituting ineffective assistance of counsel. Having failed to present the other claims below, petitioner cannot now obtain review of them from this Court. Lyle v. Koehler, 720 F.2d 426, 428-29 (6th Cir.1983). Therefore, we will consider only those claims that petitioner properly preserved.
 
 
 17
 First, petitioner argues that his counsel failed to move for suppression of his prior convictions. Petitioner had three prior felony convictions, which he testified to on direct examination. It is apparent from a review of the record that a key element of the defense strategy was to show that petitioner was not hiding anything from the jury in order to intensify his credibility and the jury's sympathy for him. Such a strategy does not demonstrate that petitioner's counsel was not functioning as "counsel" guaranteed by the sixth amendment pursuant to the Strickland test. Further, this strategy, if it could be deemed a serious error, did not deprive petitioner of a fair trial.
 
 
 18
 Petitioner's second allegation of error is that counsel failed to object to the introduction into evidence of photographs of the deceased. The photographs, however, should not have affected the defense strategy, which was that another person did the killing, not that the murder had not occurred. Petitioner argues that the photographs undoubtedly inflamed the jury. An integral element of petitioner's strategy, however, was the argument that the police were not interested in the truth but rather merely wanted to convict someone. Joint App. at 298-99. Allowing the photographs to be admitted into evidence is consistent with this argument, for a gruesome murder would seem to intensify this alleged attitude of the police. Finally, there is no evidence that the photographs did inflame the jury. Thus the second prong of the Strickland test is not met, for any error did not deprive petitioner of a fair trial.
 
 
 19
 Petitioner's third allegation of error is that petitioner's counsel inadequately cross-examined witness Rose LaFlamme. LaFlamme testified on direct examination that she believed petitioner told her that he had committed the murder. Petitioner argues that his counsel, on cross-examination, emphasized her harmful testimony by (1) inquiring about a prior statement she had made that allegedly seemed to indicate that petitioner had spoken to her another time regarding his involvement in the crime, and (2) asking LaFlamme if the petitioner had said that "dead men don't talk." Joint App. at 221-23. A review of the record, however, indicates that petitioner's counsel was attempting to impeach LaFlamme's testimony by referring to prior inconsistent testimony, and that the statement "dead men don't talk" pertained to LaFlamme's admission that she understood petitioner's statements to mean that he was not going to inform on Stanley. Destroying LaFlamme's credibility was a sound strategy, and cannot be said to constitute ineffective assistance of counsel.[4]
 
 
 20
 Because we find that petitioner was not denied his right to confrontation, was not placed in double jeopardy, was not denied due process, and was not deprived of a fair trial due to the ineffective assistance of counsel, we AFFIRM the decision of the District Court denying petitioner's petition for a writ of habeas corpus.
 
 
 
 [1]
 Petitioner argues that he was prevented from exploring Stanley's possible motive for killing Lyke. Petitioner fails to explain, however, why it was necessary that Stanley testify regarding where he obtained the gun in order to demonstrate Stanley's alleged motive for murdering Lyke. Stanley asserted his fifth amendment right to avoid incriminating himself with respect to the breaking and entering, and because it is not apparent how, if at all, the lack of such testimony would have hindered petitioner's case, we find that if a constitutional violation occurred, any error was harmless
 
 
 [2]
 Smith testified that petitioner told him that he had shot Lyke in the head six times; that later, petitioner told him that he and a Charles Derbeck each shot the victim three times in the head; and that still later, after Stanley was arrested, that "they" said "they each shot him twice." Joint App. at 231-34
 
 
 [3]
 Smith's disclosure that he had bargained for a reduction in his sentence from a possible sentence of life imprisonment to a term of ten to fifteen years imprisonment was enough to alert the jury to Smith's possible interest in testifying
 
 
 [4]
 The government notes that petitioner presented another allegation of error in the courts below--that counsel failed to object to the prosecutor's use of the term "contract killing" during the closing argument. This argument, however, does not appear in petitioner's brief and thus is not presented in this appeal